UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted December 18, 2002*
Decided February 14, 2003

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 02-1917

TROY WATTS,
*Petitioner-Appellant*,

v.

JEFFREY URDANGEN LIMITED,
JEFFREY URDANGEN, and
MARY C. MARUBIO and others known
and unknown at present,
*Respondents-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.

No. 00 C 6982

Edward A. Bobrick,
*Magistrate Judge*.

**ORDER**

In this diversity action against his former lawyer, Troy Watts alleged breach of contract, fraud and legal malpractice. The district court dismissed the case for failure to meet the

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2).



No. 02-1917 Page 2

$75,000 jurisdictional threshold required by 28 U.S.C. § 1332. Mr. Watts now appeals. He submits that the jurisdictional amount can be satisfied on a ground different from the one that he presented when the district court considered the defendants' motion to dismiss. Indeed, Mr. Watts did not discuss this calculation in any of his filings prior to the court's dismissal of his claim, but rather presented it in a post-judgment motion under Fed. R. Civ. P. 59(e), which the district court denied. For the reasons set forth in this order, we affirm the district court's decision to dismiss the action for want of jurisdiction.

### A.

Troy Watts was arrested and charged with participation in a heroin-importing ring. In order to secure legal representation for her son, on August 12, 1997, Mr. Watts' mother, Mildred Busch, entered into a fee agreement with Attorney Jeffrey Urdangen.[1] The agreement contained three provisions relevant to this appeal: (1) Urdangen would receive a fee of $40,000 for legal services, and Busch would additionally submit $10,000 to cover expenses; (2) if the case were to be resolved without trial, the total fee would be between $15,000 and $20,000, with expenses likely to be minimal; and (3) in the event of

---

[1] Mr. Watts also names as defendants Urdangen's law practice and Urdangen's fellow-attorney, Mary Kay Marubio. Our analysis applies to all three defendants.

exceptional and unforeseeable circumstances, the fee would be increased in a manner agreed to by both parties.

Shortly before his trial was to begin, Mr. Watts pleaded guilty to money-laundering and conspiracy to import heroin. Urdangen subsequently wrote to Mr. Watts' mother concerning the remaining fees and expenses. Noting that there remained $15,946.84 of the original $40,000 fee in the client escrow account, Urdangen discussed the future disposition of these funds:

> We've agreed that you will receive a $8,000 refund and the balance will go to future legal fees and expenses related to Troy's sentencing and any post-trial matters. I've explained that all pre-trial investigation and preparation were completed when Troy pled guilty. Also a great deal of effort remains before his final sentence is determined. As such, the fee has been substantially higher than an ordinary guilty plea. You have agreed to this amount which, as we discussed, amounts to a modification of the original fee agreement.

Mr. Watts was sentenced to 24 years in prison. He also forfeited $49,500 in cash, a laptop computer worth $3,000, and two handguns worth a total of $600. He maintains that all of this property was obtained through legal means. He further claims that Urdangen had promised to contest the forfeiture, but failed to do so. He also alleges that Urdangen failed, despite his promise, to challenge the amount of drugs at sentencing, resulting in a longer prison term. Mr. Watts subsequently attempted on his own to challenge his sentence under 28 U.S.C. § 2255, but was unsuccessful.

As we noted earlier, Mr. Watts alleges fraud, breach of contract, and legal malpractice. Although there is some overlap in Mr. Watts' presentation of these three claims, his allegations come down to these five points: (1) despite Urdangen's suggestions in his letter discussing the fee agreement modification, Mr. Watts' mother never agreed to such a modification; (2) because the criminal case did not go to trial, Urdangen properly earned only between $15,000 and $20,000, and therefore owes Mr. Watts and/or Mr. Watts' mother a partial refund of up to $25,000; (3) Urdangen did not use all of the $10,000 that had been given him for expenses, and therefore owes Mr. Watts and/or his mother a partial refund of the expenses money as well; (4) Urdangen should have contested the forfeiture of Mr. Watts' property but did not; and (5) Urdangen failed to contest the sentence imposed on the grounds of drug quantity and limited conspiratorial participation.

In an amended complaint filed on April 3, 2001, Mr. Watts requested compensatory damages of $99,500 -- $49,500 for the money lost because Urdangen had not challenged its forfeiture, and $50,000 for the money paid to Urdangen for services he had not performed. Mr. Watts also requested punitive damages of $9.9 million for fraud and malpractice.

Urdangen moved for dismissal for want of federal diversity jurisdiction, based in part on Mr. Watts' failure to show damages of more than $75,000. Mr. Watts responded to the motion,

repeating the claims for damages that he had alleged in his amended complaint.

Analyzing Mr. Watts' computation of damages, the district court first concluded that punitive damages were unavailable under Illinois law for breach of contract or for legal malpractice and that such damages therefore could not be included in the calculation of the amount in controversy. The court then examined the remaining $99,500 to ascertain whether it was supported by competent proof. First, the court subtracted the $8,000 that Urdangen already had returned to Mr. Watts' mother. The court then assumed, *arguendo*, that half of the remaining fee plausibly could have been in payment for representation at the forfeiture proceedings. Adding the value of Mr. Watts' handguns and laptop computer, the court concluded that Mr. Watts' conceivable damages totaled only $74,100.

We review a district court's determination of the amount in controversy for clear error. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995). When a defendant challenges the alleged amount, the plaintiff must support the assertion of jurisdiction with "competent proof." *Id.* Under this standard, the plaintiff must produce "proof to a reasonable probability that jurisdiction exists." *Id.* The test is not whether the plaintiff is actually entitled to the amount he claims, *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir. 1998), but whether the rules of the law, applied to the facts of the

No. 02-1917                                                        Page 6

case, could in principle produce a sufficient award. *See Schlessinger v. Salimes*, 100 F.3d 519, 521 (7th Cir. 1996).

The district court correctly determined that Mr. Watts' claim for punitive damages cannot be sustained. The court correctly held that a legal malpractice claim against a defense attorney in a criminal matter requires that the plaintiff prove his innocence of the crime of which he was convicted. *See Griffin v. Goldenhersh*, 752 N.E.2d 1232, 1240 (Ill. App. 2001), *appeal denied*, 763 N.E.2d 317 (Ill. 2001). Mr. Watts' conviction and sentence remain intact even after his 28 U.S.C. § 2255 proceeding.

We therefore turn to the breach of contract claim.[2] With respect to this claim, Mr. Watts' appellate brief suggests a different theory to meet the jurisdictional amount than the one submitted to the district court during consideration of the motion. Under this new approach, he no longer predicates the fee refund on Urdangen's alleged failure to contest the forfeiture. Rather, he claims that the refund is due because the criminal proceeding did not go to trial. He points out that the original fee agreement provided that, if the case were resolved without going to trial, the fee would be somewhere between $15,000 and

---

[2] Although Mr. Watts uses the word "fraud" in his amended complaint to describe the defendants' behavior, his complaint does not state with any particularity the circumstances that would constitute fraud, as required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b); *see Insolia v. Philip Morris Inc.*, 216 F.3d 596, 606-07 (7th Cir. 2000).

$20,000. Urdangen's evidence shows that Mr. Watts' mother agreed to the later modification of that agreement, in light of the amount of work that had been done at the time of Mr. Watts' guilty plea and that remained to be done before sentencing. Mr. Watts claims, however, that his mother never agreed to such a modification and that the original fee agreement therefore stands. With a few other adjustments, including a rebate of the unused portion of the $10,000 expense fund, Mr. Watts arrives at a figure of $78,219.

By now relying on this new figure, Mr. Watts does not simply dispute the district court's method of calculation; he relies on a fundamentally different claim than the one he originally brought. In the district court, from his amended complaint to district court's dismissal of the action, Mr. Watts consistently maintained that he was due $49,500 for the cash he had forfeited and $50,000 in refunded fees for Urdangen's failure to contest that forfeiture. When the district court concluded--reasonably, we believe--that Mr. Watts could not possibly recover more than the jurisdictional minimum on such a claim, Mr. Watts changed his approach by suggesting a new basis for the fee's recovery. Mr. Watts' new approach is not just a challenge to the district court's reasoning; it fundamentally alters the nature of the claim by relying on a significantly different factual base. As we have in the past, we decline to consider the argument on appeal. See Workman v. United Parcel Serv., Inc., 234 F.3d 998,

No. 02-1917                                                          Page 8

999-1000 (7th Cir. 2000); see also *Abish v. Northwestern Nat'l Ins. Co. of Milwaukee, Wis.*, 924 F.2d 448, 452 (2d Cir. 1991).

Accordingly, we therefore affirm the district court's dismissal of Mr. Watts' claims for want of federal jurisdiction.

AFFIRMED